UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

WILLIAM THOMAS                    )
HENDRICKS JR., *Pro Se*,          )
                                  )
            Plaintiff,            )
                                  )
v.                                )        NO.:  3:05-CV-377
                                  )              (VARLAN/SHIRLEY)
GOVERNOR'S TASKFORCE FOR          )
MARIJUANA ERADICATION, *et al.*,  )
                                  )
            Defendants.           )

## MEMORANDUM OPINION

Plaintiff William Hendricks Jr. alleges that defendants, individuals and agencies involved in law enforcement activities, violated his civil rights during an incident on August 3, 2004.  On that date, plaintiff alleges certain defendants trespassed onto his property in Roane County, Tennessee, and when he confronted them and ordered them to leave, they shot, battered and falsely arrested him.  Plaintiff alleges defendants are liable for false arrest, use of excessive force, false imprisonment, conspiracy, illegal search and seizure, criminal trespass, and harassment.

This civil action is before the Court on two motions: (1) the motion for summary judgment filed by defendants Roane County, Tennessee, the Roane County Sheriff's Department, Jon French in his official and individual capacities, and Michael Capps in his official and individual capacities (the "Roane County defendants") [Doc. 34]; and (2) the motion for summary judgment filed by defendants Jason Poore, Alexander Rodriguez, and

Fred Sullivan in their individual capacities (the "Governor's Task Force defendants") [Doc. 41].[1] Plaintiff has responded to each motion [Docs. 45, 46, 47, 50]. The Court has carefully considered the pending motions for summary judgment in light of the record as a whole and the applicable law. The Court will address each of the arguments made by the various defendants as to why plaintiff's claim against them should be dismissed. For the reasons set forth herein, the Roane County defendants' motion for summary judgment and the Governor's Task Force defendants' motion for summary judgment will be granted.

## I.       Relevant Facts

As the Court is required to do in reviewing a motion for summary judgment, all facts will be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

On August 3, 2004, plaintiff let his dog out of his home, at which point the dog began barking. Believing that the dog was barking at a pack of wild dogs with which plaintiff had been having "problems," [Doc. 1 at 4], plaintiff went back inside his home and retrieved a .22-caliber rifle with a scope in order to scare the trespassing dogs. When plaintiff returned outside, he noticed vehicles moving down his driveway, appearing to be leaving his property. Plaintiff took his dog inside, then proceeded to go behind his house toward his tractor shed, where he saw the vehicles stopped. [*Id.*]

---

[1]The claims asserted by plaintiff against defendants Poore, Rodriguez, and Sullivan in their official capacities were dismissed by order of the Court [Doc. 32] on June 7, 2006.

At this point, plaintiff observed three trucks, one of which was partially obscured by his tractor shed. Two of the trucks were unmarked and the partially obscured truck and one of the other trucks were hauling trailers with all-terrain vehicles. [*Id.*] Plaintiff then approached the area where the trucks were parked and claims to have heard voices talking and seen that "people were in my tractor shed." [*Id.* at 5.] After watching these individuals for approximately ten minutes, plaintiff fired four shots into the air. According to plaintiff, he did this so that these individuals would know he "was also armed and was aware of their presence." [*Id.*] Plaintiff then proceeded to walk toward the men with his rifle across his arms. [*Id.*] As he got closer to the tractor shed, plaintiff saw four men in camouflage with pistols. Plaintiff claims that these men did not have law enforcement insignias on their clothes. As plaintiff approached, one of the men stated that they were with law enforcement, but plaintiff did not believe him. [*Id.*]

Plaintiff states that he informed the men they were trespassing and asked them to leave his property. Plaintiff then walked over to porch of his son's mobile home in order to watch the men leave. As this point, plaintiff noticed that the truck which had been previously obscured had Tennessee Valley Authority markings on it, which prompted him to put down his rifle. [*Id.*] Plaintiff then walked toward the edge of the mobile home's porch and down the steps, at which point plaintiff states he was fired upon by defendant Rodriguez, a member of the Governor's Task Force on Marijuana Eradication. Plaintiff also claims that defendant Poore, also a member of the Governor's Task Force on Marijuana Eradication, then yelled to the other men to get plaintiff. [*Id.]* As plaintiff moved closer to the men, he claims that

he was tackled by defendant Capps.[2]  While on the ground, defendant Rodriguez allegedly kicked plaintiff in the head.  Shortly thereafter, plaintiff was taken to jail by defendant French, a chief deputy with the Roane County Sheriff's Department. [*Id.*]

On August 18, 2004, plaintiff was charged in a two-count indictment for the conduct arising out of the above-described August 3, 2004 incident that is the basis of this lawsuit. [*United States of America v. William T. Hendricks, Jr.*, Case. No. 3:04-CR-119, Doc. 1.] Specifically, plaintiff was charged with using a firearm to "forcibly assault, oppose, impede, intimidate, and interfere with an officer and employee of the United States" and using a firearm "during and in relation to a crime of violence." [*Id.*] Plaintiff was found guilty on both counts by a jury verdict on May 31, 2006, [*Id.* at Doc. 52] and was sentenced to a term of imprisonment of 122 months. [*Id.* at Doc. 64.]

## II.     Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  The burden of establishing there is no genuine issue of

---

[2] In his complaint, plaintiff contends that defendant Capps was an agent of the ATF at the time of this incident.  However, the Roane County defendants' answer makes clear that at the time of this incident, defendant Capps was a deputy sheriff with the Roane County Sheriff's Department. [Doc. 18 at 2.] Because plaintiff does not contest this assertion, the Court will treat defendant Capps as an employee of the Roane County Sheriff's Department for the purpose of resolving the pending motions for summary judgment.

material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

III.    **Analysis**

42 U.S.C. § 1983 provides a civil cause of action when a citizen is subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of law. It is well settled that § 1983 by its terms does not create

5

any substantive rights but rather "merely provides remedies for deprivations of rights established elsewhere." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000)). To prevail on his § 1983 claims, plaintiff "must establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Radvansky*, 395 F.3d at 302 (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)). In other words, plaintiff must first show that he has suffered a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *McKinley v. City of Mansfield*, 404 F.3d 418, 429 (6th Cir. 2005).

In his complaint, plaintiff asserts the following seven claims against the defendants in this case: (1) false arrest; (2) use of excessive force; (3) false imprisonment; (4) conspiracy; (5) illegal search and seizure; (6) criminal trespass; and (7) harassment. [Doc. 1 at 3-4.] Plaintiff purports to raise all of these claims under § 1983, [*Id.* at 2], but has failed to specify, as he is required to do state a valid § 1983 complaint, which substantive constitutional rights defendants violated in committing those alleged acts. *Barrett v. Steubenville City Schools*, 388 F.3d 967, 971 (6th Cir. 2004). His complaint also fails to specify which of the thirteen defendants sued committed which of the claims he alleges, thereby making it unclear which defendants are accused of which violations. In this way, plaintiff's complaint appears to fail to state a claim upon which relief can be granted. *Mountain View Pharmacy v. Abbot Labs.*, 630 F.2d 1381, 1386-87 (10th Cir. 1980). However, out of an abundance of caution and given the significant leeway afforded to *pro*

*se* plaintiffs, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court will assume that plaintiff intends to bring his claims of false arrest, excessive force, and illegal search and seizure under the Fourth Amendment. Plaintiff's remaining claims of false imprisonment, criminal trespass, and harassment will be treated as state law claims brought before the Court pursuant to supplemental jurisdiction under 28 U.S.C. § 1367. The Court will discuss the treatment of plaintiff's claim for conspiracy more fully below.

In their respective motions for summary judgment, defendants have presented several arguments as to why they are entitled to judgment as a matter of law on plaintiff's various claims. The Court will address the two motions for summary judgment and the arguments contained therein in turn.

A.    Defendant Roane County Sheriff's Department

Defendant Roane County Sheriff's Department seeks to be dismissed from this lawsuit on the grounds that it is not an entity capable of being sued. [Doc. 35 at 2-3.] Plaintiff does not directly address this contention in his response to the Roane County defendants' motion for summary judgment [Doc. 45], but instead rather confusingly argues that "[t]he motion for dismissal contains the relevant factors for consideration as to whether or not the County itself as well as the Sheriff's Department are in fact persons." [*Id.* at 6.]

After careful review, the Court agrees with defendant Roane County Sheriff's Department and finds adequate case law to support its position that it is not a separate legal entity capable of being sued. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (Jefferson County Police Department is not an entity which can be sued under § 1983);

*Alexander v. Beale Street Blues Co., Inc.*, 108 F. Supp.2d 934, 947 (W.D. Tenn. 1999) (Memphis Police Department does not have capacity to sue or be sued under § 1983); *Cherry v. Blount County Sheriff's Office*, No. 3:99-CV-647 (E.D. Tenn. Jan. 13, 2000) (Blount County Sheriff's Office is not a suable entity within the meaning of § 1983). Accordingly, summary judgment will be entered against plaintiff and the claims against the Roane County Sheriff's Department will be dismissed.

B.  Defendants Roane County, Tennessee, French in his Official Capacity, and Capps in his Official Capacity

Defendants Roane County, Tennessee, Jon French in his official capacity, and Michael Capps in his official capacity argue that plaintiff's claims against them should be dismissed because plaintiff has failed to show that his civil rights were violated pursuant to an unconstitutional policy or custom of Roane County. [Doc. 35 at 3-4.]

At the outset, the Court notes that to the extent that individual defendants French and Capps are sued in their official capacities as officers of the Roane County Sheriff's Department, such claims are in essence claims against Roane County. *See Monell v. Department of Social Services of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) ("A section 1983 action against a city official in his or her official capacity is treated as an action against the City entity itself.") (quoting *Barber v. City of Salem*, 953 F.2d 232,

237 (6th Cir. 1992)).  Accordingly, the claims against Roane County and defendants French and Capps in their official capacities will be analyzed identically.

Liability under § 1983 may be imposed against a local governmental entity only where a "custom" or "policy" attributable to the governmental entity led to the defendants' unconstitutional conduct.  *Monell*, 436 U.S. at 691.  These policies may be set by the governmental entity's lawmakers or "by those whose edicts or acts may fairly be said to represent official policy." *Id*. at 694.  In order to state a claim against a governmental entity under § 1983, therefore, plaintiff must show that a policy or custom attributable to the governmental entity resulted in a violation of plaintiff's constitutional rights.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477-79 (1986); *Doe v. Claiborne County, Tennessee*, 103 F.3d 495, 507-508 (6th Cir. 1996).  A municipal "policy" for purposes of § 1983 requires a "deliberate choice to follow a course of action ... made from among various alternatives by the official or the officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483.  A "custom" that is a basis for a civil rights violation must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir.), *cert. denied*, 510 U.S. 826 (1993).  Moreover, plaintiff must show that Roane County itself caused the constitutional violation, *i.e.*, that there is a direct causal link between the policy or custom and the constitutional injury.  *Doe*, 103 F.3d at 508.

Plaintiff's complaint does not identify any policy or custom of Roane County which could arguably be linked to an alleged violation of his constitutional rights.  Further, because

9

there is no *respondeat superior* liability under § 1983, *Monell*, 436 U.S. at 691, *Searcy v. Dayton*, 38 F.3d 282, 286 (6ᵗʰ Cir. 1994), Roane County cannot be liable for an injury inflicted solely by its employees or agents. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6ᵗʰ Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, plaintiff's complaint fails to state a claim against Roane County and defendants French and Capps in their official capacities upon which relief under § 1983 can be granted. Therefore, summary judgment will be entered against plaintiff on those claims.

C.    Defendant French in his Individual Capacity

Defendant French argues that summary judgment should be entered as to plaintiff's claim of excessive force against him in his individual capacity because "[t]here is no claim of any force used as to Jon French." [Doc. 35 at 4.] Plaintiff does not deny that he makes no claim of excessive force against defendant French, but argues that "[b]y filing the warrants against the Plaintiff and participating...he may also be held liable and the case should not be dismissed against him." [Doc. 45 at 8-9.] Plaintiff bases this assertion upon his interpretation of § 1983 and the conclusion that the statute allows for liability against "officers who participate in false arrest ad/or imprisonment even if they are not the physical arresting officer." [*Id.* at 8.]

The Court notes that the only allegation found in the complaint against defendant French is plaintiff's statement that he "is the officer who signed the arrest warrants" and "[h]e also tried to question and intimidate me in jail before I had been read my rights...." [Doc. 1 at 6.] In order to state a claim against defendant French, plaintiff must make specific

10

allegations that defendant French was personally involved and personally participated in a deprivation of plaintiff's constitutional rights. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). Even affording plaintiff substantial leniency in stating his claim against defendant French, plaintiff has simply failed to present any evidence tending to show that defendant French engaged in conduct resulting in a violation of plaintiff's civil rights. In the absence of such proof, defendant French cannot be held liable under § 1983 and he is therefore entitled to judgment as a matter of law on plaintiff's claim of excessive force against him.

### D. Defendant Capps in his Individual Capacity

Defendant Capps notes that "[t]he only real claim against [him] is that Plaintiff alleges he tackled the pro-se Plaintiff," a contention that defendant Capps denies. [Doc. 35 at 4.] However, defendant Capps argues that even if he did tackle plaintiff, he is entitled to qualified immunity as to plaintiff's claims against him. Plaintiff argues that "tackling and/or taking down a suspect in a tense or dangerous situation requires some physical force and must therefore be viewed as legal." [Doc. 45 at 4.]

All claims that law enforcement officers have used excessive force in the course of an arrest are analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). A court must judge the use of force from the perspective of a reasonable officer on the scene, under the totality of the circumstances, and according a measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances at hand in a particular case. *Graham*, 490 U.S.

at 396-97. In making this determination, the Sixth Circuit considers the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004); *Burchett v. Keifer*, 310 F.3d 937, 944 (6th Cir. 2003).

Assuming the truth of plaintiff's allegations for the purpose of this motion for summary judgment, the Court finds that defendant Capps's alleged tackling of plaintiff was not unreasonable so as to violate plaintiff's civil rights. In his complaint, plaintiff claims that he was "unnecessarily tackled and brought to the ground by two men (Bob Klyece and another man whom I believe to have been Michael Capps, I would recognize him if I saw him again)...." [Doc. 1 at 3-4.] That is the sum total of plaintiff's allegations against defendant Capps. Plaintiff does not allege that he was injured in any way by the tackling by defendant Capps, thus strongly suggesting that the tackling did not rise to the level of excessive force. *See* Lyons *v. City of Xenia*, 417 F.3d 565, 578 (6th Cir. 2005) (finding that the law enforcement officer's tackling of the plaintiff did not constitute excessive force because "it did not result in anything approaching a serious physical injury."). Furthermore, plaintiff admits that he had previously fired four shots into the air and then approached the law enforcement officers with his rifle in his hand in order to let them know "I was also armed and was aware of their presence." [Doc. 1 at 5.] Such behavior on the part of plaintiff invariably threatened the safety of the officers present, thereby making it entirely reasonable for defendant Capps to have engaged in the relatively minimal measures of tackling plaintiff

when he began moving towards the officers as they attempted to arrest him. *See Darrah v.*
*City of Oak Park*, 225 F.3d 301, 307 (6ᵗʰ Cir. 2001). Thus, plaintiff has not established that

a constitutional violation occurred as a result of defendant Capps tackling him and defendant

Capps is therefore entitled to summary judgment on this claim. Accordingly, the Court need

not address defendant Capps's argument that he is entitled to qualified immunity. *See*

*Summers v. Lewis*, 368 F.3d 881, 888 (6ᵗʰ Cir. 2004).

      E.     The Government Task Force Defendants

          1.    *Excessive Force*

First, the Government Task Force defendants argue that their use of force to arrest

plaintiff was reasonable and therefore did not result in a violation of plaintiff's civil rights.

[Doc. 42 at 6-9.] They contend that "[t]he force used with respect to the shot fired at

plaintiff (which convinced plaintiff to put his rifle down) and the force used to apprehend

plaintiff was reasonable in that the force in both instances was exerted to achieve a legitimate

law enforcement goal – apprehend an individual who had just fired shots at law enforcement.

[*Id*. at 8.] In the alternative, the Government Task Force defendants argue that even if their

use of force did result in a constitutional violation, they are entitled to the defense of

qualified immunity and accordingly should be granted summary judgment on plaintiff's

claim of excessive force. [*Id.* at 9-11.] In response, plaintiff merely restates the allegations

contained in his complaint, but with regard to the shot fired by defendant Rodriguez, notes

that "[i]f the officer fired 'reasonably,' to a 'perceived threat,' it is excusable." [Doc. 47 at

1.]

As was the case with plaintiff's claim of excessive force against defendant Capps, the Court must determine wether the use of force against plaintiff was objectively reasonable, judged from the perspective of a reasonable officer on the scene, under the totality of the circumstances, and according a measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances at hand in a particular case. *Graham*, 490 U.S. at 396-97. At the outset of this analysis, the Court notes that plaintiff alleges that defendant Poore kicked him in the face and head after he had been tackled by defendant Capps and that defendant Rodriguez fired a shot at him. [Doc. 47 at 1.] Plaintiff makes no allegations in any of his filings that defendant Sullivan used excessive force against him. Accordingly, defendant Sullivan is entitled to judgment as a matter of law as to plaintiff's claim of excessive force and will not be considered in the following analysis.

Considering the totality of the circumstances, the Court does not believe that the force used against plaintiff by defendants Poore and Rodriguez was unreasonable. As noted by the Government Task Force defendants in their brief in support of their motion for summary judgment, the Supreme Court has held that it is not unconstitutionally unreasonable for a law enforcement officer to use deadly force where that officer has probable cause to believe that a suspect poses a threat of serious physical harm, either to the officer or to others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Even viewing all of the facts in the light most favorable to plaintiff, defendant Rodriguez did not act unreasonably in using deadly force against him. Given that plaintiff had fired four shots in the air and brandished a .22-caliber rifle for the express purpose of "wanting to let them know that I was also armed," [Doc. 1 at 5], both

14

defendants Poore and Rodriguez had probable cause to believe that plaintiff posed a threat of serious physical harm to them. As they admit in their brief in support of their motion for summary judgment, defendants Poore and Rodriguez "reasonably believed that plaintiff would shoot at them again." [Doc. 42 at 9.] All of the evidence suggests that defendant Rodriguez shot at plaintiff out of self-defense. *See Garner*, 471 U.S. at 11. Thus, because defendant Rodriguez's actions were motivated by a concern for protecting and preserving his own life and that of his fellow officers, the shot he fired at plaintiff was not unreasonable. *Sargent v. City of Toledo Police Dept.*, 150 Fed. Appx. 470, 475 (6th Cir. 2005).

As to the alleged striking of plaintiff by defendants Poore and Rodriguez, this action also was not an unreasonable use of force under the circumstances. Again, given the threatening circumstances with which the officers were faced on account of plaintiff brandishing and discharging his rifle and their resulting fear that plaintiff would shoot them again, [Doc. 42 at 8-9], the striking of plaintiff was an appropriate use of an intermediate degree of nonlethal force that was arguably necessary to subdue plaintiff. *Gaddis ex rel. Gaddis v. Redford Tp.*, 364 F.3d 763, 774-775 (6th Cir. 2004).

Lastly, the Court notes that a ruling in plaintiff's favor on this excessive use of force claim would likely undermine the validity of his prison sentence for assault of an officer of the United States with a firearm and use of a firearm during a crime of violence, given that that sentence has not been reserved, overturned, or otherwise invalidated. *See Chatman v. Sagle*, 107 F.3d 380, 382 (6th Cir. 1997). Accordingly, for all of these reasons, plaintiff

cannot maintain his excessive force claim and defendants Poore and Rodriguez are entitled to judgment as a matter of law on this claim.[3]

        2.     *Unlawful Arrest*

Second, the Government Task Force defendants argue that plaintiff has failed to make out a claim for unlawful arrest in violation of the Fourth Amendment because his arrest and imprisonment were made on probable cause. [Doc. 42 at 12-13.] Specifically, defendants point to the fact "that plaintiff was indicted and ultimately convicted of the crimes for which he was arrested" as conclusive proof that defendants had probable cause to arrest him. [*Id.* at 13.] Plaintiff admits that he "has been found guilty on the counts of the indictment" and "is currently incarcerated as well as that he was originally arrested," [Doc. 46 at 13-14], but contends that "the denial of his Fourth Amendment Rights, certainly provide the legal tort." [*Id.* at 14.]

To determine whether plaintiff's arrest was constitutional under the Fourth Amendment, the Court must determine whether probable cause existed for the arrest. As explained by the Sixth Circuit, the question is "'whether, at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Smith v. Thornburg,* 136 F.3d 1070, 1076 (6th

---

[3]As a result, the Court need not determine whether the conduct of defendants Poore and Rodriguez was qualifiedly immune. *See Summers*, 368 F.3d at 888.

Cir. 1998); *Donovan v. Thames,* 105 F.3d 291, 298 (6th Cir. 1997) (quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964)).

In this case, that question has already been answered by the prosecution of the criminal charges and sentencing of plaintiff as a result of the incident underlying this lawsuit. Where a plaintiff is afforded "an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Smith*, 136 F.3d at 1077. As reflected in the record, plaintiff was indicted on and eventually adjudged guilty by a federal jury on the basis the conduct for which he was arrested on August 2, 2004 – namely, assaulting a federal officer with a firearm and carrying and discharging a firearm during and in relation to a crime of violence. [Case. No. 3:04-CR-119, Doc. 52.] Accordingly, because plaintiff had the opportunity to contest probable cause throughout the federal criminal prosecution of him on the charges arising out of the incident that is at issue in this case, plaintiff is foreclosed from relitigating that issue now. Thus, defendants Poore, Rodriguez, and Sullivan are entitled to judgment as a matter of law on this claim.

F.    Illegal Search and Seizure

In his complaint, plaintiff alleges that he "caught the officers (4) going through my tractor shed. They had no search warrant. They of course found nothing, as there was nothing to find." [Doc. 1 at 4.] In their motion for summary judgment, the Governor's Task Force defendants contend that they were not conducting a search of plaintiff's shed, but were

17

only there "for the purposes of setting up in defensive positions and protecting themselves from the shots that plaintiff was firing at them," [Doc. 42 at 14], thereby essentially arguing that no search of plaintiff's property took place. In response, plaintiff argues that "the officers were in the shed at the time of the shooting incident and not in the shed to take cover from the shots being fired." [Doc. 50 at 2.] Plaintiff, however, does not contest the Governor's Task Force defendant's assertion that they did not in fact search plaintiff's shed.

Except in limited circumstances, "a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camera v. Mun. Ct. of San Francisco*, 387 U.S. 523, 528-29 (1967). However, a search of property occurs only when one's reasonable expectation of privacy is infringed. *United States v. Perez*, 440 F.3d 363, 374 (6th Cir. 2006). Conversely, "[o]fficial conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (internal quotation marks removed). Here, the facts indicate, and plaintiff has not contested, that the officers did not search plaintiff's tractor shed. Instead, they were simply present in the shed. Thus, plaintiff has failed to state a claim under § 1983 that an unreasonable search occurred by failing to prove that a search of his property did in fact occur. Accordingly, the Roane County and Governor's Task Force defendants are entitle to judgment as a matter of law as to plaintiff's claim that he was subjected to an unreasonable, or illegal, search.

G.    Conspiracy

In his response to the Roane County defendants' motion for summary judgment [Doc. 34], plaintiff for the first time asserts that he is bringing his claim for conspiracy under 18 U.S.C. §§ 241 and 242, as opposed to bringing such a claim under state law. [Doc. 45 at 2.] However, his complaint makes no mention of that federal statute.  Instead, plaintiff entitled the document "Complaint for Violation of Civil Rights (42 U.S.C. Section 1983)," [Doc. 1 at 2], and later states that "the defendant officers in this case conspired to tell lies and file false charges against me to deprive me of my liberty...." [*Id.* at 4.]

Because the liberal pleading standards of the Federal Rules of Civil Procedure are not applicable at the summary judgment stage of a case, plaintiff is not permitted to raise this claim of conspiracy under federal law in his response to defendants' motion for summary judgment.  *Tucker v. Union of Needletrades, Indus. and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005).  To allow otherwise would violate the Federal Rules of Civil Procedure's requirement that a complaint "give the defendant fair notice of [a] claim and the supporting facts."  *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001).  Thus, because plaintiff's complaint makes no mention of a claim of conspiracy arising under 42 U.S.C. § 1985, defendants were not put on notice of this claim until over one year after plaintiff filed this action, during which time plaintiff was free to seek leave to amend his complaint to add such a claim.  However, he did not and therefore the Court will not consider the merits of such a late-brought claim.  *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997).

Furthermore, the Court notes that even if plaintiff's claim for conspiracy could be construed as being brought under § 1983, plaintiff has failed to plead that claim with the requisite degree of specificity required by the Sixth Circuit to avoid dismissal. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). As noted above, plaintiff merely states in his complaint and subsequent filings that he has asserted a claim for conspiracy, [Doc. 1 at 4; Doc. 45 at 2], but provides no facts supporting such a claim. As such, plaintiff's conspiracy claim consists only of "vague and conclusory allegations unsupported by materials" and therefore are "not sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Accordingly, plaintiff's claim for conspiracy will be dismissed.

H.    State Law Claims

In light of the Court's ruling on plaintiff's federal claims against the Roane County and Governor's Task Force defendants as set forth above, the Court will decline to continue to exercise supplemental jurisdiction over plaintiff's state law causes of action against those defendants. 28 U.S.C. § 1367(c). Accordingly, plaintiff's claims for false imprisonment, criminal trespass, and harassment alleged against the Roane County and Governor's Task Force defendants will be dismissed without prejudice.

**IV.    Conclusion**

For the reasons set forth herein, the Roane County defendants' motion for summary judgment [Doc. 34] and the Governor's Task Force defendant's motion for summary judgment [Doc. 41] are hereby **GRANTED**, resulting in the following:

(1)    All federal claims against defendants Roane County, Tennessee, Jon French in his official and individual capacities, Michael Capps in his individual and official capacities, Jason Poore in his individual capacity, Alexander Rodriguez in his individual capacity, and Fred Sullivan in his individual capacity are **DISMISSED with prejudice**;

(2)    All claims against defendant Roane County Sheriff's Department are **DISMISSED with prejudice**;

(3)    Plaintiff's claim of conspiracy is **DISMISSED with prejudice**; and

(4)    Plaintiff state law claims of false imprisonment, criminal trespass, and harassment are **DISMISSED without prejudice to refiling in state court**.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE